UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-cv-61603-ALTONAGA/REID

JAMES IRWIN MITCHELL,

    Movant,

v.

UNITED STATES OF AMERICA,

    Respondent.
_____/

**REPORT AND RECOMMENDATION**
**DENYING MOTION TO VACATE SENTENCE**

James Irwin Mitchell ("Movant") filed a *pro se* Motion to Vacate, Set Aside, or Correct his Sentence under 28 U.S.C. § 2255 (the "Motion") [CV ECF No. 1][1] challenging the constitutionality of his conviction. *See generally* Mot. [*id.* at 5]. Movant requests that the Court vacate his conviction—a 72-month sentence for brandishing a firearm in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii). [*Id.*]. The Honorable Cecilia M. Altonaga referred this matter to the Undersigned for an evidentiary hearing and Report and Recommendation solely to resolve whether Movant is entitled to an out-of-time appeal. [ECF No. 7 at 2] (citing *United States v. Spielvogel*, Nos. 00-cr-21, 06-cv-154, 2006 WL 4757823, at *5 (M.D. Fla. Oct. 25, 2006)). For consideration of this Motion, Movant and the Government filed Pretrial Memoranda. [CV ECF Nos. 20, 22]. Upon review of the Memoranda, the record, and following

---

[1] Citations to [CV ECF] refer to docket entries in this civil case, Case No. 24-cv-61603-CMA. Citations to [CR ECF] refer to docket entries in Movant's underlying criminal case, Case No. 23-cr-60022-CMA-1.

an evidentiary hearing, the Undersigned **RECOMMENDS** that the Motion [CV ECF No. 1] be **DENIED**.

## I.     FACTUAL AND PROCEDURAL HISTORY

A. Trial Court Proceedings and Direct Appeal.

In 2023, a grand jury indicted Movant on three counts: (1) carjacking, in violation of 18 U.S.C. § 2119(1); (2) brandishing a firearm in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii); and (3) possession of a firearm and ammunition by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). Indictment [CR ECF No. 1 at 1–2]. The maximum penalties Movant faced included fifteen years of imprisonment for carjacking, ten years for the felon-in-possession counts, and a consecutive mandatory minimum of seven years to life on the § 924(c) charge. [*Id.*].

Assistant Federal Public Defender, Adebunmi Lomax ("Attorney Lomax"), was appointed to represent Movant. [CV ECF No. 13]. During her representation, Attorney Lomax negotiated a plea deal with the Government, where Movant would plead guilty to the lesser-included charge in Count 2 of possession of a firearm in furtherance of a crime of violence, pursuant to 18 U.S.C. § 924(c)(1)(A)(i), and the Government would dismiss the carjacking and felon-in-possession counts. [CV ECF No. 22 at 1]; *see also* Change of Plea Tr. [CR ECF No. 52 at 5:13–16] (The Court: "When you plead guilty, you give up the right to fight the case. The only proceeding remaining will be the sentencing hearing. Do you understand that?" Movant: "Yes, sir.").

The lesser possession charge required a five-year minimum term of imprisonment term of imprisonment. [CV ECF No. 22 at 1]. Furthermore, given Movant's pending state conviction, the parties agreed that he "should receive federal jail credit for the fifteen-month sentence he was previously sentenced to" and "entered into a plea agreement, which states that the parties would recommend that the sentence in this case run concurrent to the sentence previously imposed in

*State of Florida v. James Irwin Mitchell . . . .*" [CV ECF No. 6 at 3] (internal citation and quotation marks omitted). Ultimately, on August 21, 2023, the Court imposed a 72-month term of imprisonment on Count 2, to be served consecutive to the state sentence the Movant was currently serving, followed by a five-year term of supervised release, $2,000.00 in restitution, and a $100.00 assessment. [CR ECF No. 36]. The Movant had already completed serving the state sentence by the time the federal sentence was imposed. [CV ECF No. 38 at 26–29].

B.  Movant's 28 U.S.C. § 2255 Proceedings.

On August 18, 2024, Movant filed a 28 U.S.C. § 2255 motion to Vacate, Set Aside, or Correct his sentence asserting various grounds for habeas relief, each relying upon ineffective assistance of counsel. *See generally* [CV ECF No. 1]. One of the grounds he raised is that Attorney Lomax was ineffective for failing to consult with him about appeal or file a direct appeal of his sentence as instructed. [*Id.* at 5].

The matter was referred to the Undersigned for an evidentiary hearing solely on the issue of whether Movant's counsel was ineffective for failing to consult with him about an appeal or file a notice of appeal as instructed. [CV ECF No. 7]. The court deferred ruling on the other grounds raised in his § 2255 motion. [*Id.*].

The Undersigned set the matter for an evidentiary hearing, appointing counsel to represent Movant, and requiring appointed counsel to file a narrative statement prior to the evidentiary hearing consisting of, among other things, a brief written statement signed by Movant under penalty of perjury setting forth his anticipated testimony. [CV ECF No. 8].

In the narrative statement, Movant alleged that when the sentencing judge "failed to sentence [him] to concurrent time as agreed to in his plea agreement and other issues, [he] told his lawyer Adebunmi Lomax, AFPD, he wanted her to file a direct appeal." [CV ECF No. 20 at 1–2]

3

(alteration added). During sentencing, Movant allegedly whispered into Attorney Lomax's ear that he wanted her to file a direct appeal. [*Id.* at 2]. She allegedly told Movant that filing a notice of appeal would not make a difference since by the time his appeal reached the Eleventh Circuit Court of Appeals, he would have already served his sentence. [*Id.*].

Movant claims he told counsel that "it was worth fighting for" since the sentencing judge enhanced the sentence by a year. [*Id.*]. He alleges that Attorney Lomax told him again that filing a notice of appeal would not matter. [*Id.*]. Still, Movant told her to file the notice. [*Id.*]. He further claimed she visited him in lockup in the courthouse after he was removed from the courtroom and he again stated he wanted her to file an appeal. [*Id.*]. Attorney Lomax "answered it would not make a difference. [Movant] said [']I don't care file the appeal.['] She then walked out at the conclusion of their conversation." [*Id.*] (alterations added).

According to Movant, in September 2023, he telephoned Attorney Lomax, and requested that the Court's sentencing transcript and any new legal information that may affect his sentencing. [*Id.*]. He then again asked to file a sentencing appeal on his behalf. [*Id.*]. Attorney Lomax, however, informed him that the deadline to appeal had passed, and that his only other option would be filing a 28 U.S.C. § 2255 motion under an ineffective assistance of counsel claim. *See* [*id.*].

Movant's list of anticipated witnesses included himself, his stepmother Diana Nelson, his sister Shirnese Tumblin, and Attorney Lomax. [*Id.* at 3–4].

## II.  LEGAL STANDARD

Title 28 U.S.C. § 2255 states in relevant part that "[a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution . . . may move the court which imposed the sentence to vacate, set aside, or correct the sentence."

The law is clear that counsel's failure to file a direct appeal after being requested to do so by his client results in a per se constitutional violation of a movant's Six Amendment right to counsel, which entitles the movant to an appellate proceeding. *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) ("[W]e have long held that a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable"); *Stanton v. United States*, 397 F. App'x 548, 549 (11th Cir. 2010) (quoting *Roe*, 528 U.S. at 477).

There is a presumption of prejudice "with no further showing from the defendant of the merits of his underlying claims when the violation of the right to counsel rendered the proceeding presumptively unreliable or entirely nonexistent." *Roe*, 528 U.S. at 484. Counsel's performance in these circumstances is per se deficient because "the decision to appeal rests with the defendant." *Id.* at 479. A defendant need not establish that his direct appeal would have been arguably meritorious; he need only show that his counsel's constitutionally deficient performance deprived him of an appeal he would have otherwise taken. *Garza v. Idaho*, 586 U.S. 232, 247 (2019).

The movant bears the burden of proof in habeas proceedings. *Strickland v. Washington*, 466 U.S. 668, 695–96 (1984); *Shiver v. United States*, 619 F. App'x 864, 865 (11th Cir. 2015). By requiring habeas litigants to bear the burden of showing constitutional error, criminal proceedings are treated as "valid until proven otherwise." *Occhicone v. Crosby*, 455 F.3d 1306, 1310 (11th Cir. 2006); *Clark v. United States*, No. 19-81163-Civ-Middlebrooks/Matthewman, 2021 WL 5353251 (S.D. Fla. 2021).

### III.   EVIDENTIARY HEARING

At the evidentiary hearing, Movant's counsel admitted he was unable to reach Movant's sister to verify her testimony or determine whether she would appear, and Movant's stepmother was elderly and did not have the "financial capacity" to travel to Miami to testify. Counsel

proffered that had Movant's stepmother appeared, she would have testified that "shortly after the sentencing on August 21st, I believe, of 2023 my client spoke to his mother to please call Ms. Lomax to convey to her his desire to have the appeal filed …and the mother was told by the federal defender that it was too late to do so. So, from the response of what the mother told me I'm assuming it was beyond the 13 days that would have been necessary for an appeal to be filed." He further proffered that frankly she could not recall when she spoke to her son.

A. <u>Attorney Lomax's Testimony at the Evidentiary Hearing.</u>

Attorney Lomax testified that she has served as an assistant federal public defender for the past eleven years and currently holds the position of supervisory assistant federal public defender. She handles both trials and appeals and explained that it is the office policy that when instructed by a defendant to file a notice of appeal, she would file the notice without regard to the viability of the appellate issues. When she was assigned to Movant's case, she conducted an initial interview with him at the federal detention center. Although she does not recall the specific details of their conversation, she believes they discussed the charges, the indictment, and Movant's background. She remembered being aware of a pending state case against him that could impact his consecutive or concurrent time in this matter.

Attorney Lomax stated that Movant was charged under 18 U.S.C. § 924(c), and her understanding was that "there was a seven-year mandatory minimum on the 924(c) count that had to run consecutive to the carjacking counsel if [Movant was] convicted of both counts." She explained this to Movant, and he decided to plead guilty. The Government drafted an initial plea deal where he could face between thirteen to fifteen years, but the parties "ultimately . . . ended up with the plea agreement that allowed him to plead a lesser included version of 924(c), so instead of brandishing it would be possessing." The understanding was that Movant would "plead to

6

924(c) possession of a firearm but the Government maintained the right to request a seven-year sentence and I had a right to ask for a five-year sentence." She stated further that:

> [The] Government agreed with my request to recommend that whatever sentence he gets in this case be run concurrent to the sentence that he was serving in the state case. And that was the plea agreement as we draft[ed] it. By the time we got to the sentencing hearing though, I realize[d] that [the] time of the state sentence had lapsed and so technically he was no longer serving a state sentence because by the time four months later we get a sentencing that time no longer would go towards him because he wasn't serving a sentence.

She believed that the solution was to move the Court to order the sentence *nunc pro tunc* from the previous date to reflect the state sentence, rather than recommending concurrent time. Attorney Lomax cannot recall whether Movant whispered to her to file the notice of appeal when the Court imposed a consecutive 72-month imprisonment. "[W]e were in open court. We couldn't have had a lengthy conversation, but he was standing next to me after the sentence was imposed. I told him I would come to see him in lockup. So, I had a long conversation with him in lockup, but not the courtroom."

She testified that when she visited Movant in lockup, they did discuss whether he should appeal his sentence. Attorney Lomax explained to Movant that "although we have an appellate waiver, [you] actually could appeal his sentence." She reasoned that the Court sentenced him to 72-months imprisonment, "which was technically above the guidelines of five years, and it was an upward variance even though the plea agreement contemplated the Government asking for seven [years][,] . . . ." Still, Ms. Lomax explained that it was not worth pursuing because the Eleventh Circuit would likely find his sentence reasonable. She left the meeting telling Movant the appeal process would take around a year. "I told him that . . . I just didn't think he would get his good time. . . I left that meeting not planning to appeal and not thinking he wanted me to appeal." She

7

testified that he did not request that she file a notice of appeal. She prepared an internal form in her office file closing the case.

In October, Attorney Lomax received a call from Movant's stepmother, who notified her that Movant was appealing his sentence and filing a motion for post-conviction relief under a new guideline amendment. Attorney Lomax told his stepmother that the deadline to file an appeal had passed over a month ago and that the new guideline amendment would not apply to Movant to reduce his sentence. She also contacted Movant and told him the same. She told Movant that the deadline to appeal his sentence had passed, and that she did not believe the new guideline amendment 821 was applicable. She told Movant that his criminal history points did not apply to his 924(c) charge. Nonetheless, she provided him documents from his file that he had requested but told him that the only relief left was a § 2255 motion.

On cross-examination, Attorney Lomax stated that if Movant had asked her to file a notice of appeal, she would have done so regardless of whether he had any viable appellate issues and, as a supervisory attorney, she would have instructed the five attorneys she currently supervises to do the same. She testified that the standard form notice of appeal would take about five minutes to file.

B. <u>Movant's Testimony at the Evidentiary Hearing.</u>

Movant testified that he recalled whispering into Attorney Lomax's ear in court that he wanted to file a notice of appeal. "The judge asked did I want to file an appeal and I looked at [Attorney Lomax] and . . . she gave me a little signal don't saying [sic] at the moment, but then I whispered in her ear I want to file an appeal because [the judge] enhanced me and there is a lot of thing that took place that . . . add up to my sentencing — to my situation." He stated that he wanted Attorney Lomax to file an appeal because at the "end of the day I'm still doing more time than I

have to do. So it's really self-explanatory[.] [N]obody wants to do more time than what they have had to do."

He testified that he later spoke with her in the lockup area on the same day he was sentenced and discussed whether he should appeal. He testified that he told her to file an appeal because the judge had imposed a six-year sentence rather than the five-year sentence he thought he would receive and because a psychologist should have testified at sentencing about his mental status. He testified that, "I just felt [it] didn't go as planned you know…." He recalled that she advised him that by the time the appeal was filed, he would probably be "coming home" and that it would do him no good to appeal.

According to Movant, Attorney Lomax visited him again in prison, where Movant recalled having a conversation with her to file the appeal. He then told his stepmother and sister that he wanted to appeal. On cross-examination, he admitted that Attorney Lomax had negotiated a potential sentence of 35 years down to a possible five-year sentence in the plea agreement. And, although the psychologist did not testify at sentencing, she had presented the psychologist's report to the sentencing judge. While Movant admitted he was satisfied with most of Ms. Lomax's advice, he noted that "[w]e came a long ways [sic]. I just feel like there was some kind of tricks was pulled out of the hat towards the end."

Concerning the sequence of meetings with Attorney Lomax, on direct he claimed he met with her twice during the two-week period after sentencing, but on cross-examination was uncertain whether a second meeting had occurred "in late August or beginning of September or the middle of September." When questioned by the government on cross-examination regarding whether he would risk going to trial where he could receive a 35-year sentence, in order to challenge the six-year sentence he did receive, he claimed he would.

9

## IV. DISCUSSION

In his § 2255 Motion, Movant claims that Attorney Lomax was constitutionally ineffective because she failed to consult with him about an appeal or file a notice of appeal as instructed. [CV ECF No. 1 at 5]. An attorney who fails to consult with his client about an appeal or file an appeal on behalf of a client who specifically requests it "acts in a professionally unreasonable manner per se." *Gomez-Diaz v. United States*, 433 F.3d 788, 791–92 (11th Cir. 2005) (citing *Roe*, 528 U.S. at 477). "At the other end of the spectrum, a defendant who explicitly tells his attorney not to file an appeal plainly cannot later complain that, by following his instructions, his counsel performed deficiently." *Roe*, 528 U.S. at 477 (citation omitted).

Here, while it is unclear from Movant's *pro se* Motion whether he claims his attorney failed to consult *or* failed file an appeal as instructed, both his pre-hearing narrative statement and his testimony at the evidentiary hearing acknowledge that Attorney Lomax consulted with him about an appeal. As such, the question before the Court is solely whether Movant requested that Attorney Lomax file an appeal and she failed to do as instructed. Any claim that she failed to consult with Movant regarding an appeal is foreclosed by his testimony and must be denied. The Court will then consider only his alternative argument that Attorney Lomax failed to file a notice of appeal as instructed.

A decision in this case requires the Court to make a credibility determination. Credibility determinations of witness testimony in a § 2255 proceeding are generally made by "weigh[ing] the testimony of all of the witnesses, taking into account relevant factors such as their interests in the case, the consistency or inconsistency of their testimony, and their demeanor on the stand[.]" *See Rizo v. United States*, 662 F. App'x 901, 912 (11th Cir. 2016) (per curiam) (alteration added) (citing *United States v. Ramirez-Chilel*, 289 F.3d 744, 750 (11th Cir. 2002)); *see also Anderson v.*

10

*City of Bessemer*, 470 U.S. 564, 575 (1985) (stating that demeanor, vocal inflection, the consistency or inconsistency of testimony, and the internal plausibility or implausibility of testimony are relevant considerations when determining witness credibility); *In re Soderstrom*, 524 B.R. 835, 840 (Bankr. M.D. Fla. 2015) ("In the end, this is a true 'he-said-she-said' factual dispute, the determination of which comes down to credibility of testimony.").

Movant testified that he specifically requested Attorney Lomax to file a notice of appeal before the deadline passed, stating this request was whispered to Attorney Lomax during sentencing, in a conversation in the lockup on the same day as his sentencing, and "sometime after the first lockup on August 21, 2023." He asked his sister and stepmother to notify Attorney Lomax of his intent to appeal, which they did. He provided no emails, letters, or testimony from others to support his claim. Movant argued that, since he explicitly requested the appeal, and Attorney Lomax failed to do so, counsel was per se ineffective. *See Gomez-Diaz*, 433 F.3d at 791–92 (internal citation omitted).

After weighing the testimony, considering the demeanor of the witnesses and their interests in the outcome of the case, the undersigned finds Attorney Lomax's testimony to be more credible. Movant fails to provide any credible evidence showing that he explicitly asked Attorney Lomax to file his notice of appeal, and she failed to fulfill his request. The record contains little support for Movant's allegations, especially considering the onerous burden placed on him to prove ineffective assistance of counsel. On the other, Attorney Lomax's testimony was consistent, detailed, and appears plausible. Her more than a decade-long tenure as a federal assistant public defender demonstrates her understanding of the requirement to file a notice of appeal if instructed. Her testimony regarding the timing of her conversations with Movant were clear, consistent, and plausible. She recalled that Movant had whispered to her at times during his sentencing hearing

11

but explained that, even if Movant had whispered a desire to file an appeal while still in the courtroom, she would have had a conversation with him later regarding the decision to appeal. She clearly recalled her lengthy conversation later that same day with him regarding the disadvantages of appealing his sentence. Movant acknowledged that conversation did occur. She told him that an appeal could take about a year and that she did not think he would win because the six-year sentence he received would "likely be found reasonable by the court of appeals." She testified that during that discussion, he did not ask her to file a notice of appeal. She explained that was the only conversation they had during the two-week period after his sentencing when she could have timely filed a notice of appeal on his behalf.

Despite allegedly communicating with Attorney Lomax several times after sentencing, Movant has not provided any correspondence or documentation indicating that he requested his counsel to file a notice of appeal. Additionally, Attorney Lomax negotiated a highly favorable plea deal for him, culminating in the Government dismissing charges that carried heavy penalties. As a result, the Movant would serve 72-months in federal prison, compared to the guideline range of 13 to 15 years' imprisonment or the 35-year sentence he could have received under the relevant statutes if convicted on the three indicted charges. The Movant acknowledged the benefit of Attorney Lomax's negotiations, stating, "[w]ell, we came a long way. We were initially discussing 35 years, and she managed to reduce it to 5 to 7 years. She did a good job." *Cf.* [ECF No. 22 at 2] (the Court stating during sentencing that Movant's crime is "very scary for people who are just getting gas in the middle of the afternoon. . . . Frankly, if a judge want[s] to give life imprisonment, it would probably be reasonable. Certainly 10–15 years would be reasonable because someone just got out of prison.").

Movant agreed to the plea deal and significantly benefited from Attorney Lomax's representation. While he was disappointed that he could not receive any credit for time-served on the state conviction because he had already completed serving the state sentence at the time of his federal sentencing, Attorney Lomax advised him that an appeal likely would not result in a lower sentence. Movant's testimony that after that advice, he would have appealed anyway and risked going to trial on all three charges is simply not credible. There is no evidence to convince the Court that Movant's counsel was ineffective for allegedly failing to file a notice of appeal. At most, Movant explicitly requested to appeal his sentence after the deadline, which would still prevent him from obtaining relief. *See Ventura*, 2020 WL 5230943, at *1.

Conclusively, the undersigned finds that Movant has not sustained his burden of demonstrating that counsel was ineffective for either failing to consult or failing to file a notice of appeal. Therefore, Movant's claim is without merit, and the Motion should be denied.

## V.     **CERTIFICATE OF APPEALABILITY**

A petitioner seeking to appeal a district court's final order denying his petition for writ of habeas corpus has no absolute entitlement to appeal but must obtain a certificate of appealability ("COA"). *See* 28 U.S.C. § 2253(c)(1); *Harbison v. Bell*, 556 U.S. 180, 183 (2009). This Court should issue a COA only if the petitioner makes "a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2). Where a district court has rejected a petitioner's constitutional claims on the merits, the Petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). However, when the district court has rejected a claim on procedural grounds, the Petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of

reason would find it debatable whether the district court was correct in its procedural ruling." *Id.* Upon consideration of the record, this court should deny a COA. Notwithstanding, if Petitioner disagrees, he may bring this argument to the attention of the District Judge in objections.

## VI.     CONCLUSION

Based upon the foregoing, it is recommended that the Motion to Vacate, Set Aside, or Correct Sentence [CV ECF No. 1] be **DENIED**.

A party shall serve and file written objections, if any, to this Report and Recommendation with the District Judge within **FOURTEEN DAYS** of being served with a copy of this Report and Recommendation. Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016); 28 U.S.C. § 636(b)(1)(C); *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191–92 (11th Cir. 2020).

**SIGNED** this 18th day of March, 2025.

_____
LISETTE M. REID
UNITED STATES MAGISTRATE JUDGE

cc:     **U.S. Chief District Judge Cecilia M. Altonaga**; and
         **All Counsel of Record**